UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

NATIONAL DAY LABORER ORGANIZING
NETWORK; ASIAN AMERICANS ADVANCING
JUSTICE – ASIAN LAW CAUCUS; and IMMIGRATION
JUSTICE CLINIC OF THE BENJAMIN N. CARDOZO
SCHOOL OF LAW,

        Plaintiffs,

-v-                                                Civil Case No.: 1:16-cv-00387-KBF

UNITED STATES IMMIGRATION AND
CUSTOMS ENFORCEMENT; UNITED STATES
DEPARTMENT OF JUSTICE; UNITED STATES
DEPARTMENT OF HOMELAND SECURITY;
UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES; UNITED STATES
CUSTOMS AND BORDER PROTECTION;
DEPARTMENT OF HOMELAND SECURITY'S
OFFICE OF CIVIL RIGHTS AND CIVIL
LIBERTIES; EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW; FEDERAL BUREAU
OF INVESTIGATION; DEPARTMENT OF
JUSTICE'S OFFICE OF INFORMATION POLICY;
and DEPARTMENT OF JUSTICE'S OFFICE OF
LEGAL COUNSEL,

        Defendants.

## DECLARATION OF CRYSTAL R. SOUZA

I, CRYSTAL RENE SOUZA, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury:

1. I am the Supervisory Government Information Specialist with the U.S. Department of Justice ("DOJ"), Executive Office for Immigration Review ("EOIR"), Office of the General Counsel ("OGC"), Freedom of Information Act ("FOIA") Service Center. I have served as the Supervisor of the FOIA Service Center since 2005.

2. This declaration is submitted in support of EOIR's matter in this matter. This declaration describes EOIR's procedures for processing FOIA and Privacy Act requests for access to agency records and, more specifically, agency action taken in response to the

1

    Plaintiffs' FOIA request. The statements contained in this declaration are based on my personal knowledge, my review of relevant documents kept by EOIR in the course of ordinary business, and information provided to me by other EOIR employees in the course of my official duties.

3. EOIR was created on January 9, 1983, through an internal DOJ reorganization which combined the Board of Immigration Appeals with the Immigration Judge function previously performed by the former Immigration and Naturalization Service ("INS"). The reorganization made the Immigration Courts independent from the agency charged with enforcement of federal immigration laws. The 2003 creation of the Department of Homeland Security ("DHS") removed INS from DOJ, creating further separation between the functions of DHS and EOIR. EOIR is independent of DHS, which is charged with enforcement of the federal immigration laws.

4. Under delegated authority from the Attorney General, the primary mission of EOIR is to adjudicate immigration cases by fairly, expeditiously, and uniformly interpreting and administering the nation's immigration laws. This is accomplished through various adjudicative functions including immigration hearings and appellate review of decisions in immigration matters. These proceedings provide a process through which individuals can defend themselves against government immigration charges, complaints, or denials of benefits, or through which they can seek relief from penalties imposed on or against them.

5. EOIR has a centralized processing FOIA Service Center located in OGC, which processes all FOIA and Privacy Act requests. As the Supervisory Government Information Specialist, I supervise five information access professionals and eight contractors who are responsible for the orderly processing of all public requests or demands for access to EOIR records and information pursuant to the FOIA and Privacy Act.

6. As the FOIA Government Information Specialist, I am familiar with the present policies and procedures regarding the EOIR FOIA and Privacy Act search and production processes. Additionally, I am personally familiar with EOIR's procedures and actions taken in response to the FOIA request at issue as well as which offices and EOIR components possessed responsive records. I was responsible for overseeing, assigning, and coordinating with the OGC Attorney and FOIA Specialist assigned to the searches and the final processing of responsive records retrieved in response to this request.

## EOIR PROCEDURES

7. EOIR receives FOIA requests by email or mail. Once received, an OGC staff member prints out or opens and date-stamps the request. The FOIA request is then placed in the incoming FOIA request box of the FOIA Service Center. Upon receipt of the request, the FOIA Service Center scans the request into EOIR's computer database system as a Portable Document Format (PDF) image, and designates a control number for the request.

2

8. The FOIA personnel enters into the FOIA database the FOIA requester's name and address as well as the name and number of the alien who is the subject of the request. If the FOIA request is not for a Record of Proceeding ("ROP") involving a particular alien, then a brief description of what is being requested is entered into the FOIA database.

9. Most EOIR FOIA requests are first party requests seeking copies of ROPs located at the Immigration Courts. These requests are simultaneously treated as FOIA and Privacy Act requests.[1] In such cases, a FOIA specialist conducts an electronic search for a ROP using the FOIA database, which cross-references the information entered into the FOIA system against the EOIR Case Access System for EOIR ("CASE") database. If the request seeks information other than an ROP, the step of cross-referencing the information against the CASE database does not occur.

10. At this point, the FOIA staff notes the FOIA control number on the original FOIA request and either prepares a response within ten working days, or if a response is not likely to be sent within ten working days, generates an acknowledgement of receipt with either a processing request letter or a letter requesting additional information.

11. If the request involves non-ROP information, I consult with a FOIA Attorney to scope the request and determine which components within EOIR, if any, are reasonably likely to possess responsive information.

12. If the request is for statistics or other data that can be drawn from the EOIR database, I prepare a request to the Office of Planning and Statistics ("OPAS").

## EOIR'S PROCESSING OF PLAINTIFFS' FOIA REQUEST

13. Plaintiffs submitted a FOIA request to EOIR through the FOIA email portal on March 5, 2015. The request is 29 pages with 8 pages of attachments for a total of 37 pages in length. The request seeks information about the termination of the DHS's Secure Communities program and the implementation of DHS's Priority Enforcement Program ("PEP").

14. EOIR reviewed the request and did not identify any information that would be maintained, created, or contained in EOIR records. Nevertheless, EOIR assigned a FOIA case number, 2015-12982, to Plaintiffs' EOIR FOIA request.

15. Since Plaintiffs' request sought non-ROP information and non-EOIR information insofar as the request involved Secure Communities and PEP, which are programs administered by DHS, I consulted with the OGC Senior FOIA Attorney, Cecelia Espenoza. Ms.

---

[1] EOIR applies Privacy Act ("PA") protections to its system of records because the systems are mixed systems which contain both PA and non-PA material. EOIR is aware that the many individuals in EOIR proceeding will have their status change over time and failure to accord PA protections would undermine the protection. Moreover, DOJ recognizes that alien numbers are PA-protected information.

3

    Espenoza evaluated the request and determined that it did not request any records reasonably likely to be created or maintained by EOIR and therefore that it was misdirected.

16. Ms. Espenoza attempted to contact the Plaintiffs to inform them about this determination and inquire why the Plaintiffs had directed the request to EOIR. She was unable to reach Plaintiffs by telephone.

17. When EOIR did not receive a response, EOIR informed Plaintiffs, by a letter dated March 20, 2015, that it had received their request for records and determined that the request was misdirected since it was a request for records likely to be kept by another federal agency, and that, as a result, the matter was closed. The letter advised the Plaintiffs to contact DHS for responsive information.

18. Plaintiffs subsequently sent EOIR a letter dated April 29, 2015, acknowledging that "DHS may have many of the requested records," but asserting that "EOIR [was] likely to have some responsive records" based on the Plaintiffs' "understanding that when DHS implements significant enforcement initiatives, it routinely coordinates with various agencies, including EOIR." EOIR assigned this letter a new FOIA request number, 2015-22636, and sent an acknowledgement of receipt on June 23, 2015. EOIR construed this to be a new request which modified the previous request and directed EOIR to search for records regarding DHS and EOIR coordination regarding either the termination of Secure Communities or the implementation of the PEP Program.

19. On June 22, 2015, EOIR received notice from the DOJ Office of Information Policy ("OIP") that Plaintiffs had filed an appeal of EOIR's determination in FOIA request 2015-12982.

20. EOIR responded to the OIP request for information indicating that it was now processing the request under case number 2015-22636 and thus the appeal was moot. On September 8, 2015, OIP responded to Plaintiffs' appeal by remanding the request to EOIR for final processing.

21. In response to the second request, the FOIA Service Center sent a search request to EOIR's Office of the Director based on its determination that the records involved would only be reasonably likely to be found in the Director's Office. This determination was based upon the fact that inter-agency communications between DHS and EOIR and/or any coordination regarding either the termination of Secure Communities or implementation of the PEP Program would be properly assigned to or by the Director's Office. Custodians in the Office of the Director who were asked to conduct searches included the Director of EOIR; the Deputy Director; Senior Counsel to the Director; Counsel for Legislative and Public Affairs; and the Executive Secretary.

22. Custodians were asked to search paper and electronic records for records related to or containing the search terms "PEP"; "Priority Enforcement Program"; and/or "Secure

4

Communities." EOIR also conducted a search of the relevant custodians' email using these same search terms.

23. EOIR did not conduct any search for data and statistical information because the FOIA request failed to describe a search that EOIR could perform. I consulted with OPAS to see if there was any way to derive data from the EOIR CASE database related to PEP or Secure Communities. I was informed that without a universe of data identifying the PEP or Secure Communities cases, which was data owned, controlled and maintained by DHS, EOIR would not be able to produce any data since EOIR's databases do not track or identify records related to the DHS PEP program.

24. Similarly, EOIR was unable to search individual records since EOIR did not have any way to identify individuals subject to "Priority Enforcement Queries, requests for notification or transfer, detainers, or Requests for Detention, or to any predecessor or successor queries or requests, in Individual Records Jurisdictions from November 20, 2013." Moreover, EOIR viewed the references to DHS Individual Records Jurisdictions as a descriptor which excluded EOIR from the request.[2] Finally, EOIR did not initially search for "past, current, and future estimated implementation costs of PEP to federal, state, and local governments," since the programs in question were not EOIR programs.

25. On or about August 21, 2015, EOIR received an additional copy of the Plaintiffs' request from the DOJ Justice Management Division Mail Referral Unit, which was assigned the number JMD EMRUFOIA091415-1. Since this was a copy of the original request which was being processed under 2015-22636, no further action was taken.

26. In a letter dated October 14, 2015, EOIR notified Plaintiffs that the search and review of records located to that date had located 61 pages of responsive information originating from DHS, which were referred to DHS for processing and direct response to the requesters. EOIR also notified the Plaintiffs that it was completing the review of documents on a rolling basis and it would provide a final response to Plaintiffs regarding any additional responsive records when its review was complete.

27. On or about December 3, 2015, EOIR referred an additional six pages of DHS material to DHS for review and a direct response to the requestors.

28. Plaintiffs filed this lawsuit on January 19, 2016.

29. On April 14, 2016, Plaintiffs unilaterally narrowed their original request, limiting their request to EOIR to Categories 1.A, 2, 4, and 5 of the narrowed request.

30. Pursuant to the Plaintiffs' April 14 Request, between May 20-25, 2016, EOIR conducted an additional search in the EOIR Office of Administration for records of "past, current,

---

[2] Individual Records Jurisdictions are defined at § (A)(2) of the original request as the following *ICE field offices* and all jurisdictions that they cover: Phoenix, AZ; Los Angeles, CA; San Francisco, CA; Atlanta, GA; New Orleans, LA; New York, NY; and Dallas, TX.

and future estimated implementation costs of PEP to federal, state, and local governments." The Office of Administration was asked to conduct these searches as it is solely responsible for EOIR's budget and finances. This search sought records containing any financial information referencing the search terms "PEP," "Priority Enforcement Program," and/or "Secure Communities." No information was located as a result of this search, which included a search of emails and files related to budget proposals. The searches were conducted by the Deputy Director; Controller/Deputy Assistant Director; Chief of Budget and Finance; and the Senior Budget Analyst, who are the only individuals who would deal with forecasts or projections and would be reasonably likely to maintain records responsive to the request.

31. Additionally, EOIR submitted an additional request to OPAS for data responsive to Plaintiffs' narrowed requests for statistics and individual records. OPAS responded that EOIR does not track, gather, prepare or maintain any data related to DHS PEP activities in its databases. OPAS further indicated that the CASE database does not identify the location of the ICE office originating proceedings before EOIR. As a result, OPAS determined that it could not provide any data or statistical information in response to the narrowed request.

32. On July 5, 2016, EOIR sent Plaintiffs EOIR's final response in this matter, which consisted of 297 pages of press summaries that referenced PEP or the termination of Secure Communities.

33. I declare under penalty and perjury that the foregoing is true and correct.

Executed on September 15, 2016

Crystal R. Souza