UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NATIONAL DAY LABORER ORGANIZING NETWORK,
ASIAN AMERICANS ADVANCING JUSTICE – ASIAN
LAW CAUCUS and the IMMIGRATION CLINIC OF THE
BENJAMIN N. CARDOZO SCHOOL OF LAW,

                                Plaintiffs,

-v-

UNITED STATES IMMIGRATION AND CUSTOMS
ENFORCEMENT, U.S. CUSTOMS AND BORDER
PROTECTION, UNITED STATES DEPARTMENT OF
HOMELAND SECURITY, and the DEPARTMENT OF
HOMELAND SECURITY'S OFFICE OF CIVIL RIGHTS
AND CIVIL LIBERTIES,

                                Defendants.

16 Civ. 387 (PAE)
OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

       This lawsuit involves a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, for records about a since-discontinued federal program governing immigration enforcement: the Priority Enforcement Program ("PEP"). Plaintiffs are National Day Laborer Organizing Network, Asian Americans Advancing Justice – Asian Law Caucus, and the Immigration Clinic of the Benjamin N. Cardozo School of Law (together, "plaintiffs"). The remaining defendants are U.S. Immigration and Customs Enforcement ("ICE"), U.S. Customs and Border Protection ("CBP"), the U.S. Department of Homeland Security ("DHS"), and its Office of Civil Rights and Civil Liberties (together, "defendants").[1] Defendants seek to

---

[1] Defendants U.S. Citizenship and Immigration Services, Executive Office for Immigration Review, Federal Bureau of Investigation, U.S. Department of Justice ("DOJ"), DOJ's Office of Information Policy, and DOJ's Office of Legal Counsel were previously dismissed.

withhold a number of these records, almost all pursuant to the deliberative process privilege under FOIA Exemption 5, 5 U.S.C. § 552(b)(5) ("Exemption 5").

On September 14, 2020, the Court issued a lengthy decision resolving, for the most part, the parties' cross-motions for summary judgment regarding plaintiffs' FOIA request. Dkt. 184 ("Decision"). The Court granted partial summary judgment to each side. The Court, however, reserved judgment on a subset of records, as to which it directed defendants to make further filings and submit records for *in camera* review. *Id.* Defendants thereafter voluntarily released some of the records that remained in dispute, including DHS Record Nos. 10, 17, 34, 41, 46, 98, 117, and 118; ICE Record Nos. 34, 78, 79, 85, and 86; and CBP Record No. 1. *See* Dkt. 187 ("Def. Letter"). As to these records, on November 12, 2020, defendants asked that the Court find moot its order directing additional filings, and the Court then issued an order to that effect. Def. Letter; Dkt. 190 ("Modification Order"). Defendants further asked that the Court modify its order directing ICE to release ICE Record Nos. 41–42, 50–52, 83, and to permit ICE to provide these for *in camera* review on the ground that they related to DHS Record Nos. 12, 13, 25, which the Court had designated for review *in camera*. Def. Letter. The Court granted this request, too. *See* Modification Order. On November 13, 2020, defendants produced the outstanding responsive records for *in camera* review. Dkts. 188–89, 191–95.

The Court has now carefully reviewed the records and affidavits at issue. These fall into four categories: (1) records as to which *in camera* review was necessary to determine whether the deliberative process privilege under FOIA Exemption 5 was properly invoked; (2) records as to which Exemption 5 applied, but *in camera* review and submission of an affidavit were necessary to enable the Court separately to determine whether withholding is consistent with the FOIA Improvement Act of 2016; (3) records as to which Exemption 5 applied, but submission of an

affidavit, though not *in camera* review, was necessary to determine whether withholding is consistent with the FOIA Improvement Act of 2016; and (4) records as to which an affidavit was necessary addressing redlines or other markups associated with the documents withheld.

The Court's orders as to the responsive records in each of these four categories follows. The Court here incorporates by reference the discussion in its September 14, 2020 decision as to these documents, setting out here only the additional analysis necessary to explain its outcome.

## I. Documents Ordered for *in Camera* Review to Determine if They Are Properly Withheld Under the Deliberative Process Privilege

The deliberative process privilege "is based 'on the policy of protecting the decision making processes of government agencies'" and typically "'focuses on documents reflecting advisory opinions, recommendations and deliberations comprising part of [the] process by which governmental decisions and policies are formulated.'" *Brennan Ctr. for Justice at N.Y. Univ. Sch. of L. v. U.S. Dep't of Justice*, 697 F.3d 184, 194 (2d Cir. 2012) (quoting *NLRB v. Sears, Roebuck, & Co.*, 421 U.S. 132, 150 (1975)); *see also Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 482 (2d Cir. 1999) ("The privilege protects recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." (internal quotation marks omitted)). "An inter- or intra-agency document may be withheld pursuant to the deliberative process privilege if it is: (1) pre[-]decisional, *i.e.*, prepared in order to assist an agency decision[]maker in arriving at his decision, and (2) deliberative, *i.e.*, actually related to the process by which policies are formulated." *Brennan Ctr.*, 697 F.3d at 194 (alterations, ellipses, and internal quotation marks omitted).

The privilege "generally does not cover purely factual material. Nor does it cover records merely peripheral to actual policy formation; the records must bear on the formulation or

3

exercise of policy-oriented judgment." *Nat. Res. Def. Council v. U.S. Env't Prot. Agency*, No. 17 Civ. 5928 (JMF), 2019 WL 4142725, at *5 (S.D.N.Y. Aug. 30, 2019) (internal quotation marks and citation omitted). Accordingly, "materials related to the explanation, interpretation or application of an existing policy, as opposed to the formulation of a new policy," are not subject to the privilege. *Davis v. City of New York*, No. 10 Civ. 699 (SAS), 2011 WL 1742748, at *2 (S.D.N.Y. May 5, 2011) (quoting *Resolution Tr. Corp. v. Diamond*, 137 F.R.D. 634, 641 (S.D.N.Y. 1991)). And where "messaging communications," such as talking points, "amount to little more than deliberations over how to spin a prior decision, or merely reflect an effort to ensure that an agency's statement is consistent with [a] prior decision, protection would do little to advance the purposes underlying the [deliberative process] privilege." *New York v. U.S. Dep't of Com.*, No. 18 Civ. 2921 (JMF), 2018 WL 4853891, at *2 (S.D.N.Y. Oct. 5, 2018). However, where such "communications are of a nature that they would reveal the deliberative process underlying a *not-yet-finalized* policy decision," or a not-yet- announced policy decision, deliberations about what message to deliver, and how to go about doing so, can fall within the protections of the deliberative process privilege. *Id.*; *see* Decision at 25–28.

In its Decision, the Court ordered *in camera* inspection of a number of records where defendants' *Vaughn* entries were too vague to enable the Court to determine whether they were properly withheld under the deliberative process privilege. After having carefully reviewed these documents *in camera*, the Court finds the following:

- **DHS Record No. 92:** The *Vaughn* entry for this record describes it as an email with the subject "SLLE PEP [Talking Points]." Dkt. 167-1 ("DHS *Vaughn* Index"), Record No. 92. The defendants invoke FOIA Exemption 5 as their basis for withholding the portion of this record that the plaintiffs are challenging. The Court finds that the text of the email itself is properly withheld under the deliberative process privilege, but that the attachment to the email, reflecting talking points about PEP, must be partly unredacted. The Court

identifies the following parts of that attachment as non-deliberative and so meriting unredaction: bolded-circle bullet points number 1, 2, 3, 4, 7, and 8. Those parts of the attachment are to be disclosed. However, all of the open-circle (subsidiary) bullet points are protected under the deliberative process privilege.

- **DHS Record No. 104:** The *Vaughn* entry for this record describes it as a "[d]ocument on engagement with congress by DHS." *Id.*, Record No. 104. The Court finds that it is properly withheld in full under the deliberative process privilege.

- **DHS Record No. 122:** The *Vaughn* entry for this record describes it as an "EA Status Update." *Id.*, Record No. 122. The Court finds that it is properly withheld in full under the deliberative process privilege.

- **DHS Record No. 123:** The *Vaughn* entry for this record describes it as a "One Year Anniversary of the Executive Actions." *Id.*, Record No. 123. The Court finds that it is properly withheld in full under the deliberative process privilege.

- **DHS Record No. 124:** The *Vaughn* entry for this record describes it as a "11/18/2015 Email FW: Exec Action Anniversary Blog." *Id.*, Record No. 124. The Court finds that the contested portions of the text of the email itself are properly withheld under the deliberative process privilege. The Court, however, finds that the draft blog post, which discusses past actions rather than future plans, is not protected under that privilege. Further, because the agency has not shown that there were changes later made to this draft, and thus that it is not the final language used, it is not properly withheld as a draft. *See* Decision at 29–30 ("[T]he label affixed to the record, here 'Draft,' is not dispositive." Drafts that are "as close to final as ever existed . . . are not protected by the deliberative process privilege.").

- **ICE Record No. 17:** The *Vaughn* entry for this record describes it as "Family Residential Center Press Release/ICE Actions – Side-by-Side." Dkt. 168-1 ("ICE *Vaughn* Index"), Record No. 17. The Court finds that the deliberative process privilege does not apply to this record and thus it must be produced in its entirety because the whole document is non-deliberative. It instead relates to the application of an existing policy, PEP. *See* Decision at 33.

- **ICE Record No. 29:** The *Vaughn* entry for this record describes it as "Meeting with Mayor De Blasio – March 15, 2016." ICE *Vaughn* Index, Record No. 29. The Court finds that most of this record does not fall under the deliberative process privilege, because the talking points generally state facts about and relate to the application of an existing policy. The Court, however, finds that the section under "Discussion Points" is protected from disclosure by FOIA Exemption 5, and the agency's narrow proposed redactions under FOIA

- Exemptions 6 and 7 are also properly withheld. Beyond these discrete redactions, however, the Court orders that this record be produced in full.

- **ICE Record No. 30:** The *Vaughn* entry for this record describes it as "Meeting with Mayor De Blasio – April 3, 2016." *Id.*, Record No. 30. As above, the Court finds that this document should be produced with just minimal redactions. Under FOIA Exemption 5, the bullet point in boldface type on the top of the first page may be redacted. The very limited proposed redactions made under FOIA Exemptions 6 and 7 are also permitted.

- **ICE Record No. 46:** The *Vaughn* entry for this record describes it as a "Draft letter from DHS Deputy Secretary to Sheriff of Oakland County, Michigan." *Id.*, Record No. 46. The material in this record, which consists of three versions of a letter, relates to "the explanation, interpretation or application of an existing policy, [PEP], as opposed to the formulation of a new policy" and is not covered by the deliberative process privilege. *Davis*, 2011 WL 1742748, at *2. Further, although there are some differences between the letters, indicating that at least some of them may have been drafts, the agency has not shown that these documents do not contain the final language used. Nor are there redlines or other markups on the face of the documents. The Court therefore holds that the record is not properly withheld under the deliberative process privilege. The agency is ordered to produce this record in full.

**II.     Documents Ordered for *in Camera* Review with Affidavits Identifying the Harm if Disclosed**

The FOIA Improvement Act of 2016 limits an agency's ability to withhold documents. 5 U.S.C. § 552 (a)(8)(A)(i) ("An agency shall withhold information . . . only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption described" in one of the enumerated exemptions or "disclosure is prohibited by law."). This law requires an agency to "release a record—*even if it falls within a FOIA exemption*—if releasing the record would not reasonably harm an exemption-protected interest and if its disclosure is not prohibited by law." *Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 73 (D.D.C. 2018) (emphasis added). To satisfy this foreseeable-harm standard, "an agency must explain how a particular Exemption 5 withholding would harm the agency's deliberative process." *Nat. Res. Def. Council*, 2019 WL 4142725, at *5 (quotations omitted).

For a number of the records as to which the Court found a basis for withholding under Exemption 5, the agency's *Vaughn* entry was nevertheless insufficient to satisfy the additional requirements of the FOIA Improvement Act. The Court therefore directed the agencies to submit copies of such records for *in camera* review, and to supply an affidavit explaining the particular harm that would come from the records' production. *See* Decision at 20–23, 41 (directing *in camera* review of DHS Record Nos. 12, 13, 25); Modification Order (allowing *in camera* review of the related ICE Record Nos. 41–42, 50–52, 83).

- **DHS Record Nos. 12, 13, 25, 125:** The *Vaughn* entry for DHS Record No. 12 describes it as a "Memorandum for the Deputy Secretary Regarding Civil Rights Monitoring of Immigration and Customs Enforcement Transfers from State and Local Law Enforcement Agencies." DHS *Vaughn* Index, Record No. 12. The *Vaughn* entry for DHS Record No. 13 describes it as "Email Subject: FW: [Past Due] S2BB - 3.9.15 - Meeting re PEP Monitoring; and Memorandum for the Deputy Secretary Regarding Civil Rights Monitoring of Immigration and Customs Enforcement Transfers from State and Local Law Enforcement Agencies." *Id.*, Record No. 13. The *Vaughn* entry for DHS Record No. 25 describes it as a "Memorandum for the Deputy Secretary Regarding Monitoring and Addressing Civil Rights Concerns Arising from PEP and Other Transfers from State and Local Law Enforcement Custody." *Id.*, Record No. 25. And the *Vaughn* entry for DHS Record No. 125 describes it as "10/19/2015 Memorandum RE: Non-PEP Transfers from State and Local Custody to ICE." *Id.*, Record No. 125. In its Decision, the Court found these documents were properly withheld pursuant to the deliberative process privilege because they relate to the development of a policy. *See* Decision at 20–22. After careful *in camera* review of these documents and the associated agency affidavit explaining the harm of releasing the documents, the Court finds that the agency's assertion that their release would chill pre-decisional discussions and recommendations, and thus inhibit candor within the agencies, persuasive. The Court therefore finds that these records are properly withheld in full.

- **ICE Record Nos. 41, 42, 50, 51, 52, 83:** The *Vaughn* entry for ICE Record No. 41 describes it as a **"Briefing on CRCL Monitoring of ICE PEP – March 10, 2015."** ICE *Vaughn* Index, Record No. 41. The *Vaughn* entry for ICE Record No. 42 describes it as a "Civil Rights Monitoring of Immigration and Customs Enforcement Transfers from State and Local Law Enforcement

7

Agencies." *Id.*, Record No. 42. The *Vaughn* entry for ICE Record No. 50 describes it as "Protocol for PEP Complaints and Concerns Involving State or Local Law Enforcement Agencies." *Id.*, Record No. 50. The *Vaughn* entry for ICE Record No. 51 describes it as "DHS Oversight of ICE's PEP - CRCL Implementation Plan." *Id.*, Record No. 51. The *Vaughn* entry for ICE Record No. 52 describes it as "PEP Civil Rights Monitoring." *Id.*, Record No. 52. And the *Vaughn* entry for ICE Record No. 83 describes it as "Monitoring and Addressing Civil Rights Complaints and Concerns Arising From Such Transfers from State and Local Law Enforcement Custody." *Id.*, Record No. 83. The Court finds that these documents are substantially similar to DHS Records No. 12, 13, 25, and that they should be treated the same. The Court therefore finds that these records, too, are properly withheld in full under the deliberative process privilege.

### III. Documents Requiring an Affidavit Explaining the Harm that Would Result from Their Release

For a number of the records that the Court found a basis for withholding under Exemption 5, and for which the agency's *Vaughn* entry was insufficient to satisfy the additional requirements of the FOIA Improvement Act, the Court directed the agencies to supply an affidavit explaining the particular harm that would come from the records' production. *See* Decision at 36–38, 41. The agencies did so, and also submitted these records for *in camera* review.

- **CBP Record No. 4:** The *Vaughn* entry for CBP Record No. 4 describes it as "Draft I-247 D and I-247 N Forms." Dkt. 166-1 ("CBP *Vaughn* Index"), Record No. 4. In its Decision, the Court found that this document was protected by the deliberative process privilege. Decision at 38. Upon review of the unredacted document *in camera* and the supplemental affidavit explaining the harm that would come from the release of this document, specifically why the "release of CBP Doc. No. 4 would have a chilling effect on written exchanges of draft materials and related discussions between agency officials," Dkt. 189 at 3, the Court finds the risk of harm if disclosed persuasive. The Court therefore holds that the entire record is properly withheld under Exemption 5.
- **DHS Record Nos. 21, 22, 23, 24, 27, 94:** The *Vaughn* entries for DHS Record Nos. 21–24, 94 describe each as "Draft I-247 Forms" or "Draft I-247 form." DHS *Vaughn* Index, Record Nos. 21–24, 94. And the *Vaughn* entry for DHS

>    Record No. 27 describes it as "DHS Request for Cooperative Custody Assistance." *Id.*, Record No. 27. In its Decision, the Court found that these documents are protected by the deliberative process privilege because they are iterative drafts of forms implementing PEP. Decision at 38. Upon *in camera* review of these documents as well as the affidavit submitted explaining the potential of harm were these iterative drafts disclosed, the Court finds that these records are properly withheld. In particular, the Court found persuasive the agency's explanation that if the records were disclosed, there would be a chilling effect on the agency's deliberations that could preclude "frank discussion of policy alternatives." Dkt. 192 at 8.
> - **DHS Record No. 44:** The entry for DHS Record No. 44 describes it as "7/9/2015 Email from Esther Olavarria - Subject: RE: PEP 'third form.'" DHS *Vaughn* Index, Record No. 44. This record is a draft version of I-247 forms and related correspondence. The Court finds that, for the same reason above, this record is also properly withheld.

## IV.    Documents Requiring an Affidavit as to Whether They Were Marked-up

Finally, in its Decision, the Court found that where "records include redline edits in the form of track changes and/or comment bubbles, or in-line comments, [t]he Court has no difficulty finding that such records are protected by the deliberative process privilege—they represent a snapshot in time of the 'agency's group thinking in the process of working out its policy and determining what its law shall be.'" Decision at 36 (citing *Sears*, 421 U.S. at 153). But, although the *Vaughn* index description for some records state that these included draft language, that conclusory statement alone did not establish whether such records "in fact contain deliberative redlines and edits to the content, or if instead they were circulated for additional input." *Id.* at 30 (quotations omitted). The Court thus ordered defendants to file an affidavit stating whether any of those records contain "deliberative redlines" or other markup on their faces such that they could be properly withheld as drafts. *Id.* at 31–32. Defendants thereupon released some of these records voluntarily. *See* Def. Letter; Modification Order. The Court has

9

since reviewed the rest—DHS Record Nos. 1, 3, 4, 14, 15, 16, 100 and CBP Record No. 3—along with defendants' related affidavits, *in camera*. The Court holds as follows:

- **DHS Record Nos. 1, 3, 4**: The *Vaughn* entry for DHS Record No. 1 describes it as "Meeting with LA City Attorney Mike Feuer." DHS *Vaughn* Index, Record No. 1. The *Vaughn* entries for DHS Record Nos. 3, 4 describe both records as "Mayors Summit on Immigration Implementation." *Id.*, Record Nos. 3, 4. DHS withheld these records as drafts of talking points circulated for additional input and comments, and stated in their *Vaughn* index that the records "include[d] deliberative redlines and edits." *Id.* In its Decision, the Court found that the messaging material contained in these records was not protected by the deliberative process privilege, but that the documents might still be properly withheld as drafts. Decision at 28–29. The Court, however, noted that it remained a question as to whether the records contained "deliberative redlines and edits to the content," or if instead they "were circulated for additional input, which may have included redlines and edits." *Id* at 30. If "the records were circulated for feedback, . . . that such feedback may have included markups, is not relevant to the question of whether these documents should be produced. If, on the other hand, these records themselves contain markup, they are properly withheld as drafts under Exemption 5." *Id.* After *in camera* review of the documents and the agency's affidavit, the Court finds that the records do not contain the requisite markup to be protected as "drafts" under FOIA Exemption 5 and thus must be produced in their entirety.

- **DHS Record Nos. 14, 15, 16, 100:** The *Vaughn* entries for DHS Record Nos. 14, 15, 16, and 100 describe the documents as, respectively, "Meeting With Council Member Dan Garodnick," "Meeting With Council Speaker Melissa Mark-Viverito," "Meeting with Mayor de Blasio," and "Remarks on Immigration/status of executive action." DHS *Vaughn* Index, Record Nos. 14–16, 100. DHS argued that these records merited withholding because they are drafts of talking points circulated for additional input and comments, and included "deliberative redlines and edits." *Id.* The Court ordered that they be submitted for *in camera* review to determine whether they contained the requisite "deliberate redlines" or other markup to be properly withheld as drafts. After *in camera* review of the documents and agency affidavit, the Court determines that, because these documents do contain markups on their face, they are properly withheld as drafts under FOIA Exemption 5.

- **CBP Record No. 3:** The *Vaughn* entry for CBP Record No. 3 describes the document as "Draft remarks by the CPB commissioner for Major Cities Chiefs Association in June 2015." CBP *Vaughn* Index, Record No. 3. The Court

found that the messaging materials contained in this document are not protected by the deliberative process privilege. Decision at 31–32. But, the entry's *Vaughn* index description also noted that it was a draft, and thus the Court found in its Decision that if the document contained "'deliberative redlines' or other markup on the face of the record," it could be properly withheld. *Id.* After *in camera* review, the Court finds that the record is properly withheld under FOIA Exemption 5 as a draft.

These rulings resolve all outstanding questions regarding plaintiffs' FOIA request.

The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: December 11, 2020
New York, New York